UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KYLE GREGORY,**　　　　　　　　　　**Case No.**

　　　　　　　　　　　　　　　　　　　**Honorable**

　　　Plaintiff,

**v.**

**MACOMB COUNTY, MACOMB COUNTY SHERIFF'S OFFICE, ANTHONY WICKERSHAM, AND UNNAMED MACOMB COUNTY JAIL EMPLOYEES**

　　　Defendants.

_____

**Confidant Consult, PLLC**
Attorneys for Plaintiff

**J. Baron Lesperance (P61655)**
**Liam Marin (P86480)**
3595 S. Baldwin Rd., Suite 118
Lake Orion, MI 48359
(248) 985-3930
jblesperance@confidantconsult.com
lmarin@confidantconsult.com
_____

# CIVIL COMPLAINT

1

Plaintiff, Kyle Gregory, by and through his attorneys, Confidant Consult, PLLC, for his Complaint against Macomb County, the Macomb County Sheriff's Office, Anthony Whickersham, and Unknown Macomb County Jail Employees, states and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a Title II of the Americans with Disabilities Act (ADA) action brought by a disabled former inmate of Macomb County Jail who was denied reasonable and necessary accommodations for his disability. As a result of being denied reasonable and necessary accommodations while in the custody of Macomb County Jail, Plaintiff was seriously injured. Plaintiff accordingly brings claims against Defendants pursuant to the ADA, 42 U.S.C. § 12101. Plaintiff also brings a separate civil rights action for deliberate indifference towards his medical treatment as a pre-trial detainee. Plaintiff accordingly brings a claim against Defendants pursuant to 42 U.S.C. § 1983 for Defendants' violation of Plaintiff's rights under the 14th Amendment's Due Process Clause.  Plaintiff also brings a state common-law gross negligence claim arising out of the same action or occurrence.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(3), (4).  The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367, as such claims

arise out of the same case or controversy as Plaintiff's 42 U.S.C. § 1983 civil rights action.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the discrimination and deprivation of civil rights and other conduct alleged occurred in the Eastern District of Michigan.

## PARTIES

4. Plaintiff, Kyle Gregory resides in Clay Township, Michigan.

5. Defendant, Macomb County is the municipality in which Macomb County Sheriff operates.

6. Defendant, Macomb County Sheriff's Office is the administrative body responsible for the day-to-day operation of Macomb County Jail in Mt. Clemens, MI.

7. Defendant, Anthony Wickersham is the Macomb County Sheriff.

8. Defendants, unnamed Macomb County Jail employees: doctors, nurses, and corrections officers of the Mt. Clemens Macomb County Jail.

## BACKGROUND FACTS

9. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

10. Plaintiff is a below-the-knee amputee (on his left side).

11. Plaintiff does not have a left leg.

12. Plaintiff requires the use of a prosthetic leg to walk.

13. At the time of the incident, Plaintiff was medicated with Gabapentin[1], a prescription drug. (Exhibit A).

14. Plaintiff is prescribed Gabapentin for its therapeutic nerve blocking qualities that treat his post-amputation phantom limb pain.

15. As an amputee, Plaintiff experiences near constant throbbing pain due to his phantom limb pain and requires Gabapentin to block nerve interplay that causes this excruciating pain.

16. Without Gabapentin Plaintiff experiences extreme throbbing pain.

17. Plaintiff was arrested on or about January 20, 2023 and was placed in Macomb County Jail in Mt. Clemens, MI.

18. While in custody, Plaintiff was denied his prescription medication, specifically his Gabapentin, by Defendants despite Plaintiff's repeated requests.

19. Plaintiff's partner fiancée, Ms. Ashley Cleere, called Macomb County Jail and spoke with one of the nursing staff at the Jail.

---

[1] Bone M, Critchley P, Buggy DJ. Gabapentin in postamputation phantom limb pain: a randomized, double-blind, placebo-controlled, cross-over study. Reg Anesth Pain Med. 2002 Sep-Oct;27(5):481-6. doi: 10.1053/rapm.2002.35169. PMID: 12373695.

4

20. Ms. Cleere explained to the nursing staff that Plaintiff required his prescription Gabapentin. (Exhibit C).

21. Ms. Cleere was told by nursing staff that prescription drug dispensing was a final decision left to the jail doctor, but more than likely Plaintiff would not be receiving his Gabapentin.

22. Ms. Cleere requested to speak to the jail doctor on the floor but was denied.

23. Ultimately Plaintiff was denied his prescription Gabapentin.

24. Immediately leading up to the deprivation, Plaintiff was given the highest possible dose as he was just learning how to walk with his prosthetic.

25. As a result of being denied is prescription medications, Plaintiff experienced the compound effects of returned post-amputation phantom limb pain, and physical withdrawal from being denied his necessary medication.

26. As a result of the post-amputation pain, and physical withdrawal from the medication, Plaintiff experienced extreme cold sweats, loss of sleep, diarrhea, nausea, loss of appetite, extreme anxiety, among other physical symptoms.

27. After at least a full day of sweating and extreme discomfort, Plaintiff required a shower.

28. Plaintiff requested reasonable accommodations from Macomb County Sheriff staff members so he could safely use the shower facilities.

5

29. Plaintiff's prosthetic leg is not waterproof and cannot be worn in the shower.

30. The only shower facilities available to Plaintiff had an approximate one-foot-tall lip that required him to step over to enter or exit the shower.

31. There were no ADA accessible showers made available to the Plaintiff.

32. As an amputee, with only one leg, the Plaintiff explained to a Department of Corrections employee that he was an amputee and could not use the shower without a reasonable accommodation.

33. Plaintiff explained that he required an accommodation to ensure his safe use of the shower, and specifically asked that staff to provide him with a plastic chair or any other reasonable means to ensure his safe use of the shower.

34. Defendant, an unknown Macomb County Jail corrections officer denied his request and stated that any requested accommodation would require the approval of a doctor or social worker.

35. Defendant, Macomb County Jail staff went on to inform Plaintiff that no doctor or social worker would be present for several days.

36. Plaintiff, again pleaded with Macomb County Jail staff that he required a reasonable accommodation to use the shower, and this plea was denied.

37. Plaintiff was forced to used bathroom facilities without reasonable accommodations for his disabilities.

38. On or about January 21, 2023, following Defendants' refusal to provide reasonable accommodations, Plaintiff fell in a non-handicap accessible shower.

39. Plaintiff broke his left hip during this fall. (Exhibit B).

40. As a result of the serious injury, Plaintiff had emergency surgery the following day.

41. Before the fall, Plaintiff had repeatedly requested assistance and accommodations for the safe use of bathroom facilities.

42. Plaintiff's repeated requests for reasonable accommodations for his disability where denied, ignored, and or dismissed by the Defendants.

43. Plaintiff was seriously injured as a direct result of Defendant's refusal to provide reasonable accommodations or to permit Plaintiff to use ADA accessible bathroom facilities.

44. As a result of breaking his left hip, Plaintiff has yet to fully regain mobility through the effective use of his prostatic.

## CLAIM ONE: VIOLATION OF TITLE II
## OF THE AMERICANS WITH DISABILITIES ACT

45. Plaintiff incorporates by reference the above paragraphs as paragraphs as though set forth separately herein.

46. Plaintiff brings suit under Title II of the ADA for Defendants' denial of reasonable and necessary accommodations.

47. Plaintiff informed Defendants of his ADA-qualifying condition and requested that he receive assistance for the safe use of the shower.

48. Plaintiff explained to Defendants that as an amputee, he could not safely clear the approximate one-foot step of the shower.

49. Plaintiff further explained to Defendants that he could not use his prosthetic leg as it is not waterproof and cannot be used in a shower or be exposed to water.

50. The Plaintiff explained to Defendants that he could safely use the shower if Defendants provided him with a simple plastic chair, which could use to stage his entry and exit of the shower, and safely stepping over of the shower's one-foot lip.

51. Defendants told Plaintiff that they could not grant his request for reasonable accommodations.

52. Defendants repeatedly refused to grant Plaintiff's reasonable request, stating that Plaintiff could only get any accommodations from a social worker, and that a social worker would not be available for several days.

53. Plaintiff therefore would have to wait several days for a shower or attempt to use the facility without the requested reasonable accommodations.

54. As a result of Defendants' deliberate indifference to the obvious needs of Plaintiff, Plaintiff showered in a non-ADA accessible shower without the aid of a walker or other physical supports.

55. Plaintiff slipped and fell, severely injuring himself.

56. As a result of the fall, Plaintiff suffered a broken left hip and required emergency surgery.

57. Plaintiff is an amputee that has a qualified injury under the Americans with Disability Act.[2]

58. Plaintiff's physical disability is oblivious and apparent to the ordinary observer as he is missing a leg.

59. Plaintiff also made it clear to specific staff members of Defendants that he was an amputee and required a reasonable accommodation to safely use the shower.

---

[2] To make out a *prima facie* case under Title II or the Rehabilitation Act, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

60. Plaintiff was denied safe access to bathroom facilities while in the care of Macomb County Jail, as he could not safely use shower facilities without the use of mobility aids or other reasonable accommodations. [3]

61. But for Plaintiff's disability, Plaintiff would be entitled to the use of bathroom facilities the same as individuals with no physical disability.

62. Here, Plaintiff repeatedly requested reasonable accommodations under the ADA from Defendants such a plastic chair.

63. All such requests were ignored and dismissed by the Defendants.

64. Defendants could have easily granted Plaintiff's request, and or provided him with any number of alternative reasonable accommodations that could have permitted his safe use of the shower and comply with the ADA.

65. As a direct result of Defendants' refusal of Plaintiff's repeated requests for reasonable accommodation to ensure the safe use of the shower, Plaintiff was denied equal access to the public services based on his disability as required by the ADA.

66. Defendants were on notice of Plaintiff's disability as his disability was open and obvious - <u>he was missing a leg</u>.

---

[3] *Id*.

67. Defendants were further put on notice when Plaintiff repeatedly requested reasonable accommodations for the safe use of the shower, and that he was an amputee who required such accommodations.

## CLAIM TWO: VIOLATION OF 42 U.S.C. § 1983/PLAINTIFF'S DUE PROCESS UNDER THE 14TH AMENDMENT

68. Plaintiff incorporates by reference paragraphs 1-67 as if separately set forth herein.

69. The pre-trial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment is "deliberate indifference." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Deliberate indifference is defined as a standard higher than ordinary negligence, "but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 826 (1994).

70. Defendants' nursing staff and doctor, and other staff at Defendants' facility made an intentional decision with respect to the conditions under which the Plaintiff was confined.

71. This occurred in at least two ways.

72. Firstly, Defendants deprived Plaintiff of his prescription medication, Gabapentin.

11

73. The deprivation of the medication lead to Plaintiff experiencing symptoms from both physical withdrawal and a return of post-amputation phantom limb pain that his prescription nerve blocker treated.

74. The deprivation of medication placed Plaintiff in extreme discomfort and increased his risk of contracting an infection while in Defendants' custody.

75. Plaintiff's physical withdrawal resulted in his experiencing cold sweats, excessive perspiration, diarrhea, anxiety, nausea and sleep deprivation.

76. Plaintiff required a shower to maintain basic hygiene, keep his amputee stump clean (and avoid infection), as well as attempt to alleviate Plaintiff's excruciating discomfort due to Defendants' deprivation of medication.

77. Secondly, Defendants refused Plaintiff safe access to shower facilities.

78. Plaintiff made it very clear that he could not use his prostatic leg in the shower and would need reasonable accommodations.

79. Defendants' available shower facilities had an approximate one-foot-tall step, hazardous to Plaintiff having one leg.

80. Plaintiff expressed his concerns and pointed out to Defendants that due to his disability, he could not safely use the shower without some reasonable accommodation.

81. Defendants' correction officers were plainly aware that Plaintiff could not safely access Defendants' shower facilities.

82. Defendants' correction officers did not remedy this obvious danger by providing Plaintiff with his requested reasonable accommodations, providing other reasonable accommodations, or providing him access to a ADA accessible shower.

83. The conditions created by Defendants put Plaintiff at substantial risk of suffering serious harm.

84. Defendants were plainly aware of the obvious danger both depriving Plaintiff, an inmate, of prescribed medication, and forcing Plaintiff, an obviously disabled person, to use a non-ADA shower without any reasonable accommodations.

85. Defendants did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved-making the consequences of the Defendants' conduct obvious.

86. Defendants could have granted the multiple reasonable accommodations requested by Plaintiff or imposed any reasonable accommodations to ensure the safe use of bathroom facilities for Plaintiff.

87. Plaintiff's physical disability was open and obvious - he is missing a leg and cannot walk with a prosthetic or walking aid - and expecting him to use a non-ADA shower without any such walking aids is an obvious invitation for substantial injury to Plaintiff.

88. By not taking such reasonable available measures to abate the obvious risk, the Defendants caused the Plaintiff's injuries.

89. Defendants' medical staff deliberate indifference towards Plaintiff's health and safety by knowingly withholding his Gabapentin.

90. As medical professionals, Defendants' medical staff were patently aware of the consequences of withholding Plaintiff's (an amputee) prescription of Gabapentin.

91. Defendants' deliberate indifference to Plaintiff's repeated pleas for reasonable accommodation for the safe use of the shower resulted in his injury.

92. Plaintiff made Defendants' department of corrections staff plainly aware of the danger from slipping and falling – something a one-legged amputee would experience if left to shower without any appropriate ADA accommodations.

93. As a result of Defendants' objective deliberate indifference towards the safety of the Plaintiff and Defendants' creation of dangerous conditions, Plaintiff slipped and fell in Defendants' non-ADA compliant shower and without reasonable accommodations to use such shower.

94. As a result of the fall caused by Defendants' objective indifference and at least their failure to comply with the ADA, Plaintiff broke his hip and required emergency surgery.

## **GROSS NEGLIGENCE:**

95. Defendants were grossly negligent by knowingly subjecting Plaintiff to a substantial risk of harm.

96. Plaintiff was in the custodial care of Defendants and Defendants' agents.

97. Defendants owed a duty of reasonable care to ensure the safety of Plaintiff.

98. Defendants were aware of Plaintiff's disability (he has only one leg) and that as a result he was unable to safely get over the one-foot-tall step to use the shower.

99. Defendants were aware that Plaintiff had a physical disability and could not safely access shower facilities without reasonable accommodations.

100. Defendants were on notice of Plaintiff's concerns as Plaintiff repeatedly asked Defendants for such accommodations in addition to Plaintiff having an open and obvious physical disability – only one leg.

101. Defendants repeatedly ignored Plaintiff's requests and refused to make any concessions or reasonable accommodations to aid in Plaintiff's safe use of the shower.

102. Defendants breached their duty of care by subjecting Plaintiff, an individual with an obvious physical disability (one leg), to a known danger that

15

Plaintiff had previously expressed legitimate concerns about his safety to Defendants.

103. Defendants' repeated refusal to rectify the known danger, subjected and forced that danger onto Plaintiff.

104. Given that Plaintiff was in custody, Plaintiff had few options but to comply and attempt to alleviate his pain due to Defendants' withholding medication or face increased pain and suffering without a shower <u>and</u> without his medication.

105. Plaintiff was seriously injured when he broke his hip after showering in the non-ADA compliant shower and without the use of walking aids withheld by Defendants.

106. Plaintiff's injuries are a direct and proximate result of Defendants' refusal to address the known danger by providing a walking aid and/or an ADA-accessible shower.

**WHEREFORE**, Plaintiff asks the Court for the following relief:

 a. Plaintiff honorably requests compensatory damages of $1,000,000;

 b. Plaintiff request Defendants pay penalty attorneys' fees;

 c. Grant such additional relief as this Court deems just and proper.

**I DECLARE THAT THE STATEMENTS CONTAINED HEREIN ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF**

Dated: 8/8/2023 .


Kyle Gregory, Plaintiff

Dated: 8/10/2023 .

Respectfully Submitted,

**CONFIDANT CONSULT, PLLC**
Attorneys for Plaintiff

*J. Baron Lesperance*
ID oU8bVpKGppEKw8z9Py5oGX1V
**J. Baron Lesperance(P61655)**
3595 S Baldwin Rd., Suite 118
Lake Orion, MI 48359
(248) 985 3930
jblesperance@confidantconsult.com

## eSignature Details

**Signer ID:**         **BqbNPTEMJccyD3PC4RCQ2wVp**
Signed by:          Kyle Gregory
Sent to email:      cleerema2017@gmail.com
IP Address:        68.60.38.176
Signed at:          Aug 8 2023, 5:26 pm EDT

**Signer ID:**         **oU8bVpKGppEKw8z9Py5oGX1V**
Signed by:          J. Baron Lesperance
Sent to email:      jblesperance@confidantconsult.com
IP Address:        174.245.2.68
Signed at:          Aug 10 2023, 9:45 am EDT